UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 3:16-CR-00147-1 |
| | ) | |
| BRIAN RANDALL | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is another Motion for Compassionate Release (Doc. No. 598) filed by Brian Randall. This time he "moves for a sentence reduction to time served under 18 U.S.C. § 3582(c)(1) because he is suffering from serious physical conditions that substantially diminish his ability to provide self-care in prison." (Id. at 2). In doing so, he notes that his obesity, Type 2 diabetes, hypertension, and chronic obstructive pulmonary disease he had at sentencing "has deteriorated significantly." (Id.). He asserts that, after suffering severe leg pain for several days, he was taken to the emergency room in July 2022, was found to have both a foot and urinary tract infection, and was diagnosed with sepsis. (Id. at 2). He also claims that he now suffers from Stage 4 chronic kidney disease and his BMI (body mass index) is now 50. (Id.).

Relief under Section 3582(c)(1)(A) may be warranted in cases where a prisoner, who has exhausted administrative remedies, files a motion and the court finds that a sentence reduction is warranted based on (1) an "extraordinary and compelling' reason"; and (2) "any applicable § 3553(a) factors[.]" United States v. Jones, 980 F.3d 1098, 1107–08 (6th Cir. 2020). "[T]he compassionate release decision is discretionary, not mandatory." Id. at 1106. In exercising that discretion, the Court must address both factors when granting relief, but need not do so if one of those factors indicates that relief is not warranted. United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021); United States v. Ruffin, 978 F.3d 1000, 1006 (6th Cir. 2020).

Even if Defendant's health condition has deteriorated to the extent he claims, the Court does not find release to be appropriate because the time he has served to date does not come close to reflecting the seriousness of his offense, promote respect for the law, serve as a deterrent to him or others, or provide just punishment within the meaning of Section 3553(a). As this Court pointed out in denying his last motion:

> Randall was a large-scale distributor of methamphetamine in the Lebanon, Tennessee area, which he received via shipments from co-conspirators Herbert and Brenda McGinnis. At least ten individuals were involved in the methamphetamine distribution conspiracy, but Randall was unquestionably the leader of the activity locally. He admitted to being responsible for distributing at least 4.5 kilograms of methamphetamine in the Middle District of Tennessee, and directed the sale of that drug, going so far as to instruct others on what amounts could be sold and at what price. (Presentence Report, "PSR" ¶¶9).
>
> As a result of this activity, Randall was charged by a federal grand jury with eleven counts: one count of conspiracy to distribute and possess with intent to distribute methamphetamine; nine counts of distribution and possession with intent to distribute methamphetamine; and one count of possession of firearms in furtherance of a drug trafficking offense. Randall had an offense level of 39 and, with a criminal history category VI offense, faced a Sentencing Guidelines range from 420 months to life imprisonment. To avoid that advisory Guidelines range and the possibility of a mandatory life sentence were the Government to file notices under 18 U.S.C. § 851 based upon his prior felony convictions, Randall entered into a Rule 11(c)(1)(C) agreement. In it, he agreed to plead guilty in exchange for a 288 month sentence. Even considering COVID-19 and the potential effect it could have on Randall, the Court cannot say that little more than 4 ½ years of imprisonment on a 24-year sentence is sufficient, but not greater than necessary, to fulfill the sentencing goals established by Congress.

(Doc. No. 545 at 2-3). This same conclusion applies a mere year and a half later when Randall has only served less than approximately one-third of the sentence imposed.

The Court could end here. However, having read the filings and medical records, the Court finds it worth noting a couple of additional points.

First, in response to Randall's "Notice regarding Medical Condition," (Doc. No. 616), the

2

Government attaches a commissary list of purchases made by Defendant that contains a large number of snack items. The Government does so to support its position that even though "medical staff at the prison and hospital have tried to assist the defendant in improving his health, he has repeatedly made a conscious effort to not take his health seriously as evidenced by his eating habits[.]" (Doc. No. 617 at 1-2).

In response, Randall labels this "both chimerical and callous" to the extent the Government's argument could be read as suggesting that Randall would have been cured but-for his eating habits. (Doc. No. 620 at 1). He observes: "Neither the compassionate release statute nor the Sentencing Commission's policy statement at U.S.S.G. § 1B1.13 directs the Court to rule based on the root cause of a prisoner's failing health. Rather, eligibility can turn upon the existence of a present health crisis." (Id.). Maybe so, but that is not a fair reading of the Government's argument. Besides, there is something to be said for taking personal responsibility. At a minimum, Defendant's action in apparently purchasing a large number of items presumably containing high sodium and sugar content cuts against his argument that his "serious physical conditions . . . substantially diminish his ability to provide self-care in prison," (Doc. No. 598) at least in relation to his high blood pressure and diabetes.

In that same filing, Randall complains that "the BOP still has not placed him in a medical center" and "[e]ven in today's filing [October 5, 2022], the government cannot even *estimate* when he will reach a medical center, if ever." (Id. at 1.). Apparently, that is not longer the case because the Bureau of Prison Inmate Locator indicates that, as of February 8, 2023, Randall is in the Deven Federal Medical Center in Ayer, Massachusetts. https://www.bop.gov/inmateloc (last visited 2/8/2023).

3

Case 3:16-cr-00147   Document 630   Filed 02/08/23   Page 3 of 4 PageID #: 7340

Accordingly, Defendant's Second Motion for Compassionate Release (Doc. No. 598) is **DENIED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE